(Surrogate's Court, Cattaraugus County. January, 1895.)

1. LIMITATION OF ACTIONS—RUNNING OF STATUTE—EXCEPTIONS.
    Where a surety pays the debt after the death of the principal, the statute of limitations does not begin to run until a personal representative of the principal is appointed.

2. EXECUTORS AND ADMINISTRATORS—SALE OF LAND TO PAY DEBTS.
    Under Code Civ. Proc. § 2759, providing for the sale of a decedent's lands to pay his debts, where all his personal property has been applied to the debts, or where it appears that the personalty is insufficient to pay all the debts, a proceeding to sell land may be instituted, though there has been no judicial settlement of the accounts of the administrator.

3. SAME—LACHES.
    A proceeding to sell land of a decedent for the payment of his debts, instituted 29 years after the death of the debtor, until which time no personal representative had been appointed, will not be denied on the ground of petitioner's delay in instituting the proceedings, where the contestant had a prior right to the administratorship.

Application to sell real estate of Edward Howard, deceased, for payment of debts. Granted.

Wm. Woodbury and D. E. Powell, for petitioner.
J. G. Record, for Julia A. Hogan.
W. H. Henderson, for contestant.

DAVIE, S. This proceeding was instituted in view of the determination of the court of appeals in Hogan v. Kavanaugh, 138 N. Y. 417, 34 N. E. 292. Edward Howard died in the month of September, 1864, leaving a widow, one son, and three daughters. His will, bearing date March 24, 1864, with a codicil thereto, dated April 21st of the same year, was admitted to probate January 25, 1865. No executor was named in the will or codicil, and no letters were issued until October 9, 1893, when letters of administration, with the will annexed, were issued to Deborah Kavanaugh, a daughter of testator and the wife of the petitioning creditor. She caused the usual notice to creditors to be published, and the

claim of the petitioner was the only one presented.   The petition in this proceeding was filed March 27, 1894.   At the time of the testator's death there were outstanding 13 promissory notes, of $100 each, all signed by the testator and the petitioner, none of which were due at testator's death.   Upon or after their maturity these notes were paid by the petitioner, and the amount paid by him, with interest thereon, constitutes the claim which he seeks to enforce in this proceeding.   It is claimed on behalf of the petitioner that these notes represented the individual indebtedness of the testator, and that petitioner signed them merely as surety. The contestant, on the contrary, asserts that the petitioner himself was the principal debtor and the testator surety for him.   The determination of this question necessitates a reference to the transactions out of which the indebtedness arose.   On the 15th day of December, 1854, the testator was the owner of certain lands in the town of Persia, and on that day conveyed the same to his son, George M. Howard.   The deed recited the consideration to be $700, and added that "the lands hereby conveyed for the consideration above mentioned, which is much less than their true value, are intended and received as an advancement by the said Edward Howard, the father of said George M. Howard, to said George as and for his part and just portion of the property of his said father, so that the said George is not entitled to inherit or receive any other property of his said father as heir or distributee."   On the 5th day of March, 1858, George M. Howard and wife reconveyed these lands to the testator for the consideration, as expressed in the deed, of $1,080.   To secure the payment of such consideration the testator delivered to George M. Howard two promissory notes, for $500 and $580, respectively.   Both of these notes were signed by the testator and the petitioner.   On the 27th of the same month the testator and wife conveyed these lands to the petitioner for the consideration, as expressed in the deed, of $1,080, to secure the payment of which petitioner executed a mortgage to the testator upon the same lands, conditioned for the payment of such sum in 10 equal annual payments.   This mortgage was fully paid by the petitioner, and was duly discharged July 11, 1864.   George M. Howard transferred the two notes above mentioned to one Harry Howard, and subsequently the testator became indebted to Harry Howard, over and above the amount of these two notes, and shortly before his death caused the two original notes to be taken up, and the 13 $100 notes to be executed and delivered to Harry Howard. The premises conveyed to the petitioner were worth much more than the consideration stated in the deed, and it is urged by the contestant that this circumstance, taken in connection with the fact that petitioner signed all these notes in form as a maker, justifies the conclusion that the indebtedness represented by the notes was primarily that of the petitioner.   The evidence, although somewhat meager and unsatisfactory in consequence of the long lapse of time, falls far short of sustaining the claim of the contestant.   It does not appear that the petitioner had any participation

in the purchase and reconveyance of the lands from George M. Howard to the testator. The testator was the grantee and purchaser, and therefore the party naturally obligated to pay the purchase price. It does not appear directly or inferentially that such purchase was made for the benefit or at the request of the petitioner, nor that there was any connection between the conveyance of these lands from George M. Howard to testator, and their conveyance by testator to petitioner, nor is there any satisfactory or sufficient proof that petitioner ever assumed this indebtedness as his own, or designed or intended to incur any other or greater obligation in connection with it than that of surety for the testator. Then, again, the evidence discloses a design in the mind of the testator to dispose of this land to some extent by way of an advancement. He first transferred it to his son George for an inadequate consideration, expressly declaring in the deed that it was by way of an advancement to him. He then took a reconveyance from George, giving him the two notes instead, and thereupon deeded the land to the petitioner. The petitioner and his family were just as naturally the objects of the testator's bounty as the son George. Petitioner had married the youngest daughter, and for several years had resided with his wife in the family of the testator, transacting his business and looking after and managing his affairs generally. When testator conveyed the lands to his son he expressly declared that such conveyance was in full satisfaction of the son's share in his estate. After the lands were reconveyed, the testator made his will, in which he named the son as one of the residuary legatees, making no provision whatever for his daughter, Deborah Kavanaugh, the wife of petitioner. If testator did not design the conveyance of these lands to Kavanaugh as an advancement upon his wife's share in the estate, but, on the contrary expected him to pay the $1,080 mortgage and the $1,300 in notes as well, which would have equaled the total value of the land, then there is no reason whatever apparent why testator should have excluded the daughter Deborah by the terms of his will from participating in the distribution of his estate. Moreover, the evidence distinctly shows that the testator regarded the indebtedness represented by these notes as his own, for, in conversation with several of his neighbors at various times shortly before his death, he spoke of this indebtedness to Harry Howard, unequivocally recognizing it as his own. By the terms of his will he makes a special provision regarding the management of his estate so as to meet and pay off this debt. In disposing of this question I have not lost sight of the well-settled rule that claims withheld during the alleged debtor's life, and sought to be enforced after his death, are to be carefully scrutinized (Kearney v. McKeon, 85 N. Y. 137), but from a thorough consideration of all the evidence I am unable to come to any other conclusion than that the indebtedness represented by the notes was solely and exclusively that of the testator.

The claim of the petitioner was not barred by the statute of limitations at the time of the commencement of this proceeding.

Where the statute has commenced to run against a claim before the death of a decedent, the failure to secure the appointment of an administrator does not suspend the running of the statute. The only effect of the death in such a case is to extend the time in which an action must be brought (Code Civ. Proc. § 403; Sanford v. Sanford, 62 N. Y. 553); but none of these notes had matured at the death of the testator, and no right of action accrued to the petitioner until he paid the notes in consequence of his liability as surety. The statute begins to run against the surety's right of subrogation only from the time he pays the debt. In such a case the time intervening between the maturity of the debt and the appointment of a legal representative of the estate is no part of the time limited by the statute. A cause of action cannot accrue or exist unless there is a person in esse against whom an action can be brought and the right of action enforced. In order to put the statute in motion, there must not only be a person in esse to sue, but a person to be sued. Sanford v. Sanford, supra; Davis v. Garr, 6 N. Y. 124; 13 Am. & Eng. Enc. Law, 737.

No judicial settlement of the accounts of the administrator had been had before the commencement of this proceeding. Such prior accounting, however, is not a jurisdictional requirement. The earlier cases, holding that a judicial settlement should precede the commencement of proceedings for disposition of real estate to pay debts, were before the change in the statute regulating such proceedings. The law applicable to proceedings of this character has undergone various modifications. The original statute of 1801 authorized the personal representative to institute such proceedings whenever he discovered or suspected that the personal estate was insufficient to pay the debts. The Revised Statutes of 1830 authorized such proceedings only when it was made to appear that all the personal property applicable to the payment of debts had been actually applied and was insufficient, leaving no discretion whatever on the part of the surrogate. This statute was amended by the Laws of 1837 so as to restore to the surrogate a discretion in the matter. This amendment provided that the surrogate might, in his discretion, order a disposition of the real estate, although the entire personal estate which had come into the hands of the representative had not been applied to the payment of the debts. The scope of the present statute (Code Civ. Proc. § 2759) is quite clearly defined in Kingsland v. Murray, 133 N. Y. 175, 30 N. E. 845, where the court says:

"But if the personal property left by the decedent at the time of his death was insufficient to pay his debts, or if the executors or administrators proceed with reasonable diligence in applying it to the payment of his debts, and it proves insufficient for that purpose, then, and then only, a case is made for the sale of the real estate. So, in the language of this section, before the surrogate can make a decree for the sale of the real estate, the petitioner must establish that all the personal property of the decedent which could have been applied to the payment of the decedent's debts and funeral expenses has been so applied. If he establish that, then he need go no further, and the surrogate is authorized to make the decree. If he cannot establish that, but establishes the other alternative, that the executors or administrators have proceeded with reasonable diligence in converting the personal property into

money, and applying it to the payment of the debts and funeral expenses, and that it is insufficient for the payment of the same, then, even if it has not all been so applied at the time of the petition, the surrogate is authorized to make the decree."

It would undoubtedly be much more satisfactory if a judicial settlement preceded the commencement of proceedings for disposition of real estate, as the decree would then show the extent of the personal estate and the disposition made of it; but, where no such settlement has been had, the petitioner assumes the burden of showing affirmatively, as a part of his application, the facts required by section 2759 of the Code.

In this case there is no pretense or suggestion that the testator left sufficient personal estate to pay his debts. What he did leave was consumed mainly in paying funeral expenses. Not a dollar of personal effects came into the hands of the representative. The exercise of the utmost diligence upon the part of the administratrix would not have disclosed the existence of any effects applicable to the payment of this debt. The fact that the claim of the petitioner is disputed does not deprive the surrogate's court of jurisdiction to determine its validity. In re Haxtun, 102 N. Y. 157, 6 N. E. 111; People v. Westbrook, 61 How. Pr. 138; Kammerrer v. Ziegler, 1 Dem. Sur. 177; Hopkins v. Van Valkenburgh, 16 Hun, 3.

It is urged by the contestant that the application of the petitioner should be denied in consequence of his long delay in instituting proceedings to establish his claim. The same question arose in Hall v. Brennan, 64 Hun. 394, 19 N. Y. Supp. 623, where the court says:

"From the time of the death of George B. Bixby * * * until letters testamentary were issued upon his will, * * * there was no person in being against whom plaintiffs could have brought suit to enforce their claim upon their note against his estate. This was, in effect, a statutory prohibition, and such time was no part of the time limited for the commencement of an action. Code Civ. Proc. § 406; Mead v. Jenkins, 95 N. Y. 31; Brehm v. Mayor, etc., 104 N. Y. 186, 10 N. E. 158; Church v. Olendorf, 49 Hun, 439, 444, 3 N. Y. Supp. 557. It is no answer to this view to say that plaintiffs might have applied for a temporary administrator under section 2668, Code Civ. Proc. They could not procure such appointment as a matter of right. It is expressly made dependent on the discretion of the surrogate. The law did not require them to make the application under penalty of losing their debt."

The delay in this case is, to some extent, explained by the pendency of the action, Hogan v. Kavanaugh, above cited, wherein the contestant in this proceeding was the plaintiff. The petitioner undoubtedly had the right of applying for letters of administration, with the will annexed, at any time after the probate of the will, but the contestant had a prior right to such appointment. She could have secured such appointment at any time, and, inasmuch as she neglected so to do, she is hardly in a situation to complain of the petitioner's neglect. After the probate of the will of the testator the persons to whom the real estate described in the petition was devised quitclaimed their respective interest in such real estate to the petitioner, and it is urged that the petitioner, being

the owner of such premises, is not in a situation to maintain this proceeding. Such claim is not tenable. The interests of the legatees in the real estate were subject to the rights and equitable interests of creditors. By their quitclaims to the petitioner they only transferred to him such interest as might remain after the satisfaction of the debts. Application granted.